UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 3:12CR68(AVC) |
| | : | |
| TRAVAIL MCLEAN | : | September 9, 2012 |

**SENTENCING MEMORANDUM**

The United States of America ("United States") respectfully submits this memorandum in aid of sentencing, presently scheduled for September 18, 2012. As explained below, United States recommends a sentence within the applicable sentencing guidelines range of 18 to 24 months.

**I.      The Offense Conduct and Charges**

The Government agrees with and adopts the description of the offense conduct as set forth in the July 30, 2012, PSR at pp. 1-3, ¶¶6-10, and respectfully requests this Court to adopt the factual findings of the PSR.

**II.     The PSR Properly Calculated the Defendant's Guidelines Sentencing Range**

The government agrees with and adopts PSR's calculations at pp. 4 and 9, ¶¶14-23 and 43-51. Specifically, the PSR correctly notes that the defendant has a base offense level under U.S.S.G. § 2A6.1(a)(1) of 12; that two points are added under U.S.S.G. § 2A6.1(b)(2) because the relevant conduct involved more than two threats, and that four points are added under § 2A6.1(b)(4) because the threats caused a substantial disruption of government services; and that three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, for a total offense level of 15. The PSR also correctly notes that the defendant has no criminal history points, for a criminal history category of I; and that an offense level 15 and criminal history category I result in an advisory sentencing guidelines range of 18-24 months.

### III. A Sentence of Within the Advisory Sentencing Guidelines Range of 18-24 Months is Appropriate, Fair, and Accomplishes the Purposes of 18 U.S.C. § 3553(a).

Under *United States v. Booker*, 543 U.S. 220 (2005), as elaborated by *United States v. Crosby*, 397 F.3d 103, (2d Cir. 2005), the Courts are directed first to determine the applicable sentencing guidelines range, then consider whether a departure from that Guidelines range is appropriate, and finally, assess the Guidelines range "along with all of the factors listed in [Title 18] section 3553(a)" to determine the sentence to impose. *Crosby* at 112-13. "[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

18 U.S.C. § 3553(a) identifies the following "[f]actors to be considered in imposing a sentence": (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. The United States submits that a sentence within the advisory guidelines range of 18-24 months faithfully reflects and implements these considerations.

1. Nature and circumstances of the offense, and history and characteristics of the defendant

   a. Nature and circumstances of offense

The nature and circumstances of the offense are the principal reasons for imposing a sentence within the applicable sentencing guidelines range. As set forth in the PSR and the stipulation of facts in the plea agreement letter, the defendant on nine separate days made one or more false bomb threat calls to the New Haven 911 emergency response center. The threats portrayed the most imminent dangers to innocent persons. The threatened locations all were in densely populated urban areas in the vicinity of Whalley Ave., New Haven. One threat involved a home for the elderly. Many of the threats presented heightened dangers such as imminent detonation ("one's gonna blow in five minutes if you don't find it"), threats on the lives of responding police officers ("There's a bomb at Officer Hassett's house"; "the men in the store are armed . . . they will shoot at police"); and hostages in danger of being murdered ("Bomb at 1620 Chapel, there's a hostage inside, you step in front, I'll blow it up"; "there are hostages in the house . . . people are armed with guns in the house with the hostages"; "there is hostages in the house with dynamite"; " there's a bomb in the big building on Ella Grasso and Chapel…we have hostages").

That these threats were perceived with the utmost seriousness by the police and fire departments is clearly demonstrated by the extent of the emergency responses. The following chart lists each threat date, the verbatim words of each threat, and the extent of the emergency response to each. An average of more than nine police and fire responders rushed to each threat scene; multiple fire department vehicles were deployed at most threat incidents; and entire city blocks were shut down in response to some of the threats. The responder numbers are in fact understated,

because they fail to list the number of police vehicles deployed, and the fact that other police officers on routine patrol in the area often came by to offer assistance.

| DATE | THREAT CALL(S) | EMERGENCY RESPONSE |
|---|---|---|
| 09-23-2010 | (1) "There's a bomb at 1620 Chapel . . . there's two . . . one in the house, and the other one's gonna blow in five minutes if you don't find it"<br><br>(2) "'S'two more bombs on Ellsworth"<br><br>(3) "There's a bomb at Officer Hassett's house" | – 17 police + fire responders<br>– 2 fire dept. vehicles **<br>– Chapel St. closed to traffic |
| 11-24-2010 | (1) "There's a bomb at 1628 Chapel . . . one's in the house, another one's in the back, and the next one's in the sewer, and I'm not gonna tell you where the other one's at"<br><br>(2) "Tell Officer Hassett to get off Chapel or I'll blow the whole Chapel up"<br><br>(3) "Bomb at 1620 Chapel, there's a hostage inside, you step in front, I'll blow it up" | – 11 police + fire responders<br>– 2 fire dept. vehicles<br>– Chapel St. closed to traffic |
| 12-09-2010 | "There's a bomb at 16-4 Chapel . . . 1634, and there's another one across the street in the big building" | – 10 police + fire responders<br>– 2 fire dept. vehicles |
| 02-23-2011 | (1) "There is a bomb on Premium Deli on Whalley . . . the men in the store are armed . . . they will shoot at police . . . let me repeat . . . they will shoot at police"<br><br>(2) "There is a bomb on the police station on Whalley . . . I have five bombs . . . enough to take out the whole f–ckin' Whalley . . . you better send police there a-ap or I will blow it up" | – 9 police + fire responders<br>– 2 fire dept. vehicles |
| 03-14-2011 | "It's a bomb on L and A Deli on Whalley" | – 4 police + fire responders |
| 04-25-2011 | "There's a bomb at 648 Chapel . . . there's one in the front under the porch . . . there's another in the back…there are hostages in the house . . . people are armed with guns in the house with the hostages" | – 7 police + fire responders |
| 05-29-2011 | "There is a bomb at 1626 Chapel . . . there is hostages in the house with dynamite . . . and there's another bomb buried in the back ditch" | – 10 police + fire responders<br>– 2 fire dept. vehicles |

| DATE | THREAT CALL(S) | EMERGENCY RESPONSE |
|---|---|---|
| 06-18-2011 | (1) "There's a bomb at 1642 Chapel . . . there's two . . . there's a bomb in the big building on Ella Grasso and Chapel…we have hostages . . . " <br><br> (2) "There's gonna be a bomb . . . downtown in New Haven . . . shut the f–ck up, you don't know me…" | – 17 police + fire responders, plus FBI bomb squad |
| 06-28-2011 | "There's 10 bombs in a old folks home on Derby Street." | – 12 police + fire responders <br> – 2 fire dept. vehicles <br> – Derby St. closed to traffic |

\*\*     The 09-23-2010 response included an entire "squad" from the Fire Department, which includes the "Jaws of Life" heavy extraction equipment and its trained operators. This was one of only two such squads in the entire city, which left only one other such squad available for other emergencies.

Among other things, the emergency responses catalogued above explain why the sentencing guidelines calculation of offense level should include the four point enhancement under § 2A6.1(b)(4), which applies when "the offense resulted in . . . substantial disruption of public, governmental, or business functions or services . . . ." Every time the defendant made a bomb threat call, he caused to be taken out of service for real emergencies in New Haven, a significant number of police and fire department emergency responders and several police vehicles and fire trucks – for several hours at a time.

       b.     <u>History and characteristics of the defendant</u>

With respect to the defendant, there are considerations weighing on both sides of the ledger of punishment. On the one hand, the defendant acknowledged his responsibility for the offense conduct quite soon after his first encounter with law enforcement investigators, and he entered a pre-indictment guilty plea that saved the government and the Court the expense and resource investment of a trial. Also, the presentence report makes clear that the defendant's intellectual functioning and "emotional intelligence" are not highly developed. Both of these considerations weigh in favor of a sentence in the low end of the applicable sentencing guidelines range.

On the other hand, both the pre-sentence report and the defendant's conduct while under supervision by the Probation Office pending sentencing indicates someone who often resists taking initiatives to improve his functioning and life circumstances, even when opportunities are presented. After being charged with and having pled guilty to such a serious crime, the defendant effectively refused to follow the Probation Office's guidance and specific efforts and guidance to help him advance his education or find gainful employment. Rather, the defendant has spent much of his time between the plea and trial acquiring and smoking marijuana – despite several warnings and admonitions by the Probation Office to stop such illegal conduct, and to commence more responsible conduct. It is the government's belief that the sentence in this case must constitute a serious "wake up call," so that the defendant will sufficiently appreciate the gravity and consequences of his offense conduct, and may begin to change the path of his life away from the negative turn he has chosen. A sentence characterized by excessive leniency, far from helping the defendant, will only reinforce his apparent belief that he can continue to ignore the law without consequence.

2. <u>Need for sentence to promote respect for law, specific & general deterrence, to protect the public, and provide defendant with needed training, care, and correctional treatment</u>

For the reasons discussed above, the United States believes that a sentence within the applicable sentencing guidelines range is warranted, principally for specific deterrence, that is, to protect the public from the defendant's demonstrated nonchalance about violating the criminal law and refusing to seek gainful education or employment.

3 & 4. <u>The kinds of sentences available</u> / <u>The sentencing range set forth in the guidelines</u>

Along with a sentence within the applicable guidelines range, the government recommends that the defendant's incarceration and time on supervised release include psychological counseling

and vocational training. While it is ultimately up to the defendant whether to make gainful use of such resources, it appears from the PSR that he is someone who, upon making the commitment to do so, could benefit significantly from such resources.

5. <u>Policy statements issued by the Sentencing Commission</u>

The government is not aware of any policy statements of the sentencing commission that apply to this case.

6. <u>The need to avoid unwarranted sentencing disparities</u>

Insofar as there is nothing about this case to take it outside the "heartland" of similar cases, a sentence within the applicable sentencing guidelines range will help avoid unwarranted sentencing disparities.

7. <u>The need to provide restitution to victims</u>

The defendant presently lacks the resources to compensate the City of New Haven for the costs of the several emergency responses to his bomb threat calls. However, this is a reasonable condition to include as part of supervised release, subject to the defendant's ability to pay.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that the Court impose a sentence within the applicable sentencing guidelines range of 18 to 24 months.

                          Respectfully submitted

                          DAVID B. FEIN
                          ACTING UNITED STATES ATTORNEY

                            /s/ Henry K. Kopel
                          _____

                          HENRY K. KOPEL
                          ASSISTANT UNITED STATES ATTORNEY
                          Fed. Bar No. ct24829
                          157 Church Street, 23d Floor
                          New Haven, CT  06510
                          (203) 821-3700

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 9, 2012, I filed a copy of foregoing pleading, and caused copies of same to be served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System. Copies of the foregoing pleading have also been sent directly by e-mail to counsel for defendant McLean, Ronald B. Resetarits, Esq., at Ronald_Resetarits@fd.org, and to assistant U.S. probation officer Michael P. Rafferty, at michael_rafferty@ctp.uscourts.gov.

      /s/ Henry K. Kopel

Assistant U.S. Attorney